## GRAND RAPIDS BRASS CO. v. WINTERS, STRYKER & CRAMPTON.

(Circuit Court of Appeals, Sixth Circuit. November 5, 1926.)

No. 4565.

Patents ⬡⟳328.

Grochau patent, No. 980,413, claims 1 and 2, relating to latches, with special reference to refrigerator doors, *held* valid and infringed.

Appeal from the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Patent infringement suit by Winters, Stryker & Crampton against the Grand Rapids Brass Company. Decree for plaintiff, and defendant appeals. Affirmed.

Cyrus W. Rice, of Grand Rapids, Mich. (Rice & Rice, of Grand Rapids, Mich., on the brief), for appellant.

Frank E. Liverance, Jr., of Grand Rapids, Mich., for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Suit for infringement of United States patent No. 980,413, January 3, 1911, to Grochau. The patent relates to latches, with special reference to refrigerator doors. The defenses presented are, first, that it is invalid by reason of (a) anticipation, and (b) lack of invention, in view of the prior art; and, second, noninfringement. The claims involved are Nos. 1 and 2, which we print in the margin.[1] We excerpt from the opinion of the District Judge this description of the patent and the mode of operation.

"The latch, illustrated in the drawings, described in the specification, and embodied in the claims of the patent, * * * consists of two members, which may be designated as the 'latch bar' and the 'keeper' members. The 'latch bar' member is mounted upon the door

and consists of (1) a casing or housing having a detachable base plate; (2) a shelf or ledge struck up from such base plate; (3) a latch bar so loosely mounted upon a central pivot that it may be rocked in two directions at approximately right angles to each other; that is to say, in both perpendicular and horizontal planes, the forward end of such bar projecting through the housing or casing far enough to engage the keeper upon the door frame; (4) a handle by which the latch bar is rocked in both directions to disengage it from the keeper and to move it into retracted position with the forward end thereof resting upon the shelf struck up from the base plate; and (5) a spring by which the latch bar, when released from the shelf, is returned to operative position. The 'keeper' member is mounted upon the door frame, and consists of a casing or housing, within which are located the keeper proper and a finger or pin so positioned with relation to each other and to the 'latch bar' member that, when the door is closed, the outer end of the latch bar will pass without hindrance the hook of the keeper and then contact with the finger, and thus be released from its retracted position upon the retaining shelf and forced by the spring into its operative or holding position back of and in engagement with the hook of the keeper."

We may add that a downward and outward pull on the handle permits the door to open immediately on the disengagement of the latch bar from the keeper.

1. We agree with the District Court that the Grochau patent was not anticipated. While several alleged anticipations are set up, we need consider only the Gould patent,[2] which is the closest reference cited. While there are many points of similarity between Gould and Grochau, there are substantial differences between them, of which it seems enough to say that each of the claims of the Grochau patent here in suit calls for a latch bar adapted to rock in two directions at an angle to each other, the first claim calling specifically for a rocking in a direction "approximately parallel with the side of said door, and also at right angles to said plane," whereas in Gould, while the latch bar may be swung into and out of engagement with the keeper, and lifted into and out of engagement with the retaining shelf, we do not find in Gould the double rocking action of Grochau; and while Grochau's rocking action and Gould's swinging movement are accomplished through the latch-bar handle, Gould's lifting operation is effected—to use the phrasing of

---

[1] 1. "The combination, with a door and door frame, of a latch bar carried by said door, said bar being adapted to rock, in a direction approximately parallel with the side of said door and also at right angles to said plane, means for rocking said bar in said directions, means for supporting one end of said bar in a retracted position, a keeper mounted on said door frame, and means within said keeper for releasing said bar from retracted position."

2. "In a latch, the combination, with a door and door frame, of a latch bar mounted on said door and adapted to rock in two directions at an angle to each other, means for rocking said bar in such directions, a keeper mounted on said door frame, means for holding said bar in retracted position, one end of said bar being adapted when in retracted position to enter said keeper when said door is closed, means positioned within said keeper for releasing said latch from retracted position, and means for returning said bar to operative position."

[2] No. 442,178, December 9, 1890, on window sash fasteners.

the District Judge—by drawing the beveled surface of a finger projecting from the latch bar over the opposite or beveled surface of an elevation upon the base plate. Gould clearly lacks the means "within the keeper" for releasing the bar from retracted position.

2. Manifestly, if the prior art, including Gould, does not forbid invention in Grochau, Gould does not anticipate; and we think that, while Grochau's step was not a long one, invention is not lacking. Upon this subject, also, Gould is the closest reference cited, and we need consider no others.

While Gould's device was apparently effective as a sash fastener, and with slight changes could be adapted to a refrigerator door, it is apparent there were involved in the refrigerator lock, problems not encountered in a sash fastener, and which Gould did not solve. Grochau says in his specification:

"Heretofore it has been a common fault with latches that they have failed to retract and enter the keeper when the door has been given an initial closing impulse by the operator and then set free. This fault has been particularly damaging when it has occurred with respect to refrigerator doors, and my invention is intended to remedy said fault and to insure, in large measure, the closing of the door."

Grochau's latch, more nearly than any which preceded it, met the difficulties mentioned. Its construction and operation are such that the danger of failure to lock when the door is given an insufficient closing impulse—whereby the latch bar merely collides with the nose of the keeper—is reduced to a minimum, from the fact that the latch bar normally slides over the upper surface of the keeper, being there automatically tripped, whereupon, by a rocking action, it is wedged into tight connection with the keeper. It is a distinct advance over the prior art, and we think involves invention, as distinguished from mere mechanical skill. It is a commonplace that a combination may involve invention even though every element of the combination is old. Making due allowance for the facts that plaintiff's commercial structure does not in all respects take the exact *physical* form shown in the patent drawings and specifications (including the bell-crank lever), and was not put upon the market until plaintiff bought the patent, about 12 years after it issued, we think its commercial success thereafter contributes substantially to a conclusion of invention.

3. We also think defendant's latches, manufactured by it under the Ekman patent,[3] in competition with appellee for use on refrigerator doors, infringe both claims in suit. Defendant objects that its means for releasing the latch (or latch bar) are not "within the keeper" of the patent, which, appellant contends, must be construed as within the casing shown by the patent drawings and specifications as surrounding the "keeper" proper. Defendant's structure omits this casing, as does plaintiff's commercial structure. We think the uncased and uninclosed keeper is the equivalent of a cased or inclosed keeper. The casing serves no function whatever and is useless. Presumably for this reason neither plaintiff nor defendant uses it. While recognizing that an inventor may limit himself by an intentional (though unnecessary) restriction, we are not convinced that such limitation was intended. The omission from the claims in suit of any reference to the casing tends to the contrary. We fail to find in the Patent Office history any estoppel in this respect. Nor do we see any force in the contention that infringement is avoided by the fact that, as said, defendant's latch requires the interposition of the human hand as part of the "means" for releasing the bar. Substantially as in Grochau, the hand sets the "means" in operation. We see no material distinction in the fact that in defendant's latch the bar is made integral with the handle, while in plaintiff's structure the latch portion and the handle are formed separately. We agree with counsel, that the "handle of defendant's latch is an intervening means between the latch and the hand of the operator."

The decree of the District Court is affirmed.

---

[3] No. 1,554,420, September 22, 1925.